IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| KEVIN MILAZZO, #1385992 | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:11CV350 |
| SGT LEONARD D. YOUNG, ET AL. | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Milazzo, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was assigned to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I.  **BACKGROUND**

The complaint was filed on June 15, 2011. Plaintiff claims that on or about November 19, 2009, while he was incarcerated at the Coffield Unit of the Texas Prison System, he attempted to report a minor use of force by Lt. Ham and his field officers. He alleges that he had gone to the Unit Segregation Major's Office to make his complaint, where he was "retaliated against by Sargent [*sic*] Young . . . for my trying to grieve. . . ." Complaint at 5. In the Major's Office, he alleges that Sergeant Young assaulted him, subdued him, handcuffed him and slammed him face first into the floor three times until Sergeant Young saw blood on the floor. *Id*. at 6. Plaintiff asserts that he sustained injuries including a bruised face, broken teeth, split lip which required stitches, injured shoulder and dizziness. *Id*. at 5-6. He asserts that an unknown officer was either a witness or was present or somehow had knowledge of the incident, though there is no allegation that the unknown

officer was involved in the use of force. *Id*. at 6. He also alleges that he was written up on false disciplinary charges by Sergeant Young, stating that Plaintiff was the aggressor, in an attempt to retaliate and/or cover up the incident.

Plaintiff asserts various claims, including assault and battery; false charges and retaliation; excessive use of force; failure to train subordinates; a due process violation during the ensuing disciplinary hearing and conspiracy. Following an initial review, the Court dismissed all defendants but Sergeant Young and issued an Order to Answer and Scheduling Order (docket entry #34).

Pursuant to the Order to Answer and Scheduling Order, Defendant Young has now filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (docket entry #48) (the "MSJ"). He served his motion on Plaintiff by mail to Plaintiff's address of record in Corsicana, Texas,[1] on April 9, 2012, the same day he filed his motion electronically in this Court. *See* MSJ at 9. The Court notes that on April 11, 2012, Plaintiff sent a letter to the Court (which was filed on April 16, 2012 (docket entry #49)) stating that he would be "sitting out a small traf[f]ic fine I just got . . . [at the] County Jail till [April 16, 2012]," after which time he would be back at his address of record. Assuming Plaintiff has actually received the MSJ, he has had sufficient time in which to respond to the MSJ pursuant to E.D. Tex. L.R. CV-6 and 7, even if he did not receive it until April 16, 2012. He has not done so. Accordingly, the Court is entitled to presume that he does not oppose the MSJ. *See* E.D. Tex. L.R. CV-7(d); *see also* Order to Answer and Scheduling Order at 3 ("The parties are placed on notice that failure to respond to a motion for summary judgment reflects a lack of due diligence in prosecuting the case. *See Martinez v. Johnson*, 104 F.3d 769 (5th Cir. 1997)

---

[1] Although he was incarcerated at the time of the alleged incident and when he filed this lawsuit, Plaintiff has since been released from the Texas Department of Criminal Justice (TDCJ) and currently resides at an address in Corsicana.

2

(affirming dismissal for want of prosecution based on inmate's failure to respond to a summary judgment motion as ordered by the court).").

## II. STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (quoting Fed.R.Civ.P. 56(a)). The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id*. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact

questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When the moving party has carried its burden under Rule 56(c),[2] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

---

[2] The predecessor to the current Rule 56(a).

4

Furthermore, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

## III. DISCUSSION AND ANALYSIS

Defendant asserts that Plaintiff has failed to exhaust his administrative remedies while incarcerated at the Coffield Unit. As evidence, Defendant attaches to his MSJ the Affidavit of Sandra K. Murphy (the "Murphy Aff.") and records Bates numbered by exhibit number, including Exs. A (Plaintiff's Grievance Records) and B (excerpts of TDCJ's Offender Orientation Handbook).

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Later, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id*. at 83 (which "means using all steps that the agency holds out, and doing so properly (so that the agency

5

addresses the issues on the merits)[,]" quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.), *cert. denied*, 537 U.S. 949, 123 S. Ct. 414, 154 L. Ed. 2d 293 (2002)). Most recently, the Supreme Court stated in *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." However, "failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. Subsequently, the Fifth Circuit added that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 388-89 (5th Cir. 2008) (per curiam). Here, Defendant affirmatively pleads failure to exhaust in his MSJ.

Under the TDCJ Offender Orientation Handbook, grievance (or administrative remedy) procedures are established in two written steps. First, an inmate or offender has "15 days from the date of the alleged incident or occurrence of the issue presented in which to complete the Step 1 grievance form and forward it to the Unit Grievance Investigator (UGI)." *See* MSJ Ex.B000000002 at ¶ VI.B. If the offender is not satisfied with the response to his Step 1 grievance, he "may appeal the Step 1 decision by filing a Ste 2 [ ]. You have 15 days from the date of the Warden's signature on the Step 1 form to submit the Step 2 to the grievance investigator on the unit." *Id*. (internal reference omitted). Therefore, a prisoner plaintiff must complete both of these steps before he may proceed with a § 1983 action in federal court. In this case, Plaintiff was a prisoner at the time of the incident and the time of his grievances, as well as when he filed the instant lawsuit. Therefore, he must comply with these procedures.

6

Here, Defendant submits Step 1 and Step 2 grievance forms for Plaintiff's grievance number 2010058394 under the authenticating umbrella of the Murphy Aff. dated September 6, 2011. He contends that the Step 2 grievance form was not timely submitted under the TDCJ grievance procedures, above, and was returned as being outside the grievable period. Therefore, Defendant contends, Plaintiff has not complied with the grievance procedures and has not exhausted his administrative remedies, requiring dismissal of this lawsuit. A review of the grievance forms for grievance number 2010058394 reveals that Defendant is correct regarding the untimeliness of the Step 2 grievance. However, further examination of the grievance itself reveals that the subject matter is not so much directly aimed at Defendant's alleged conduct, but at the conduct and results of the ensuing disciplinary case against Plaintiff. *See* Ex. B 000000001-04.

Furthermore, although Plaintiff has not actually responded to this MSJ, assuming he has actually received a copy of it, he has authorized the Court to review his full grievance record. During the evidentiary hearing conducted on December 8, 2011, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), Regional Grievance Coordinator Ginger Lively testified and presented copies of Plaintiff's Medical, Grievance and other records for the Court's use. It was at that time that Plaintiff consented to the Court's review of the records. The Court has done so.

Under an identical copy of the Murphy Aff. as that presented by Defendant in his MSJ, the Court found Plaintiff's Step 1 and Step 2 grievances filed in grievance number 2010052583. The Step 1 form was signed by Plaintiff on November 23, 2009, and dated as received by the Unit Grievance Investigator on November 25, 2009, all within 15 days of the November 11, 2009, alleged incident with Defendant Young. It was answered and dated by Warden Wheat on December 8, 2009, and returned to Plaintiff on December 10, 2009. Plaintiff then completed a Step 2 form on

December 14, 2009, which was received by the UGI on December 17, 2009, again all within 15 days of Warden Wheat's response on the Step 1 form. The subject matter of both Step 1 and Step 2 grievances was a detailed recounting of Defendant Young's alleged actions injuring Plaintiff on November 11, 2009, including:

> He hit me full speed, flipped me backwards over a (desk/filing cabinet) to the floor. He then put cuffs on me and began to pick me up & slam me several times until he busted my face and tooth open!

*See* Step 1 Offender Grievance Form for Grievance #2010052583. In the Step 2 form, Plaintiff appeals the denial of redress in his Step 1 form and goes on to say that when his wife pulled Plaintiff's file from the "regional director," it did not even reflect that he had been injured or that he "was already cuffed before Young beat my face into the floor (is not noted!)." *See* Step 2 Offender Grievance Form for Grievance #2010052583. He went on to complain that "My main problem with my step one is that <u>nothing</u> <u>was</u> <u>done</u> about <u>any</u> and all of what I listed!" *Id*. (emphasis in original). Taken at face value, these grievances fully exhaust Plaintiff's attempt at redress through administrative remedies.

It is unclear to the Court why Defendant did not have access to these Step 1 and Step 2 documents when they were provided to the Court from TDCJ under the same authenticating affidavit as that presented in this MSJ. As noted above, the fact that Plaintiff has not responded to this MSJ would entitle the Court to assume he does not oppose it. However, it is also unclear to the Court that Plaintiff has actually received the MSJ, given his notice to the Court at docket entry #49. Under the circumstances, the Court will refrain from making the assumption of non-opposition and will rely on Plaintiff's consent to use the records submitted to the Court by TDCJ during the *Spears* hearing discussed above. At the very least, these documents create a "genuine dispute as to any material

fact," meaning that Defendant Young is not entitled to summary judgment. *VRV Development L.P.*, 630 F.3d at 455; Fed.R.Civ.P. 56(a). It is accordingly

**ORDERED** that Defendant's Motion for Summary Judgment (docket entry #48) is hereby **DENIED**.

So **ORDERED** and **SIGNED** this **2** day of **May, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE