IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| KEVIN MILAZZO, #1385992 | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:11CV350 |
| SGT LEONARD D. YOUNG, ET AL. | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Milazzo, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was assigned to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I. **BACKGROUND**

The complaint was filed on June 15, 2011. Plaintiff claims that on or about November 19, 2009, while he was incarcerated at the Coffield Unit of the Texas Prison System, he attempted to report a minor use of force by Lt. Ham and his field officers. He alleges that he had gone to the Unit Segregation Major's Office to make his complaint, where he was "retaliated against by Sargent [*sic*] Young . . . for my trying to grieve. . . ." Complaint at 5. In the Major's Office, he alleges that Sergeant Young assaulted him, subdued him, handcuffed him and slammed him face first into the floor three times until Sergeant Young saw blood on the floor. *Id*. at 6. Plaintiff asserts that he sustained injuries including a bruised face, a broken tooth, another loosened tooth, a split lip which required stitches, an injured shoulder and dizziness. *Id*. at 5-6. He asserts that an unknown officer was either a witness or was present or somehow had knowledge of the incident, though there is no

allegation that the unknown officer was involved in the use of force. *Id*. at 6. He also alleges that he was written up on false disciplinary charges by Sergeant Young, stating that Plaintiff was the aggressor, in an attempt to retaliate and/or cover up the incident.

Plaintiff asserts various claims, including assault and battery; false charges and retaliation; excessive use of force; failure to train subordinates; a due process violation during the ensuing disciplinary hearing and conspiracy. Following an initial review and an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), the Court dismissed all defendants but Sergeant Young and limited Plaintiff's claims against Defendant Young to excessive use of force and retaliation (docket entry #32); and issued an Order to Answer and Scheduling Order (docket entry #34).

Pursuant to the Order to Answer and Scheduling Order, Defendant Young previously filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, which the Court denied. He has now filed a Motion for Summary Judgment with Brief in Support (docket entry #51) (the "MSJ") on the merits of Plaintiff's claims. He asserts a number of Undisputed Material Facts ("UMF"), MSJ at 3-5, and raises as issues of law that (1) he is entitled to qualified immunity; (2) he did not use excessive force in violation of Plaintiff's constitutional rights; (3) he did not retaliate against Plaintiff in violation of his constitutional rights; and (4) his conduct was objectively reasonable. *Id*. at 5. He has also presented exhibits to the MSJ as his summary judgment evidence.

Plaintiff then filed a Response to Summary Judgment Motion (docket entry #68) ("Response") with exhibits representing his summary judgment evidence and, a week later, a separate Response to Qualified Immunity (docket entry #69) ("QI Response"), which the Court takes together as Plaintiff's response in opposition to the MSJ.

## II.  STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (quoting Fed.R.Civ.P. 56(a)).  The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case.  *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).  Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.  *Id*.  Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden.  *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions.  *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987).  The district court must look to the full record, including the pleadings, affidavits, and depositions.  *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Under this standard, fact questions are considered with deference to the nonmovant.  *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  The evidence of the nonmovant is to be believed

and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When the moving party has carried its burden under Rule 56(c),[1] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

Furthermore, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury

---

[1] The predecessor to the current Rule 56(a).

traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

## III. DISCUSSION AND ANALYSIS

The difficulty that Defendant must overcome here is that his MSJ is essentially based on his own account of the events that transpired after he observed Plaintiff enter the Major's office on November 19, 2009, unsubstantiated by other witnesses or a video recording.

The Court will first address Defendant's claims that he did not use excessive force and did not retaliate against Plaintiff, as a matter of law, and then his claim of qualified immunity. His additional claim that his conduct was "objectively reasonable" is part of the qualified immunity analysis and will not be addressed separately.

### A. Excessive Use Of Force

The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). An excessive use of force claim has both subjective and objective components. *Id*. at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id*. at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the

responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7 (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id*.

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033[2] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9-10 (other citations omitted).

On remand from this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *see also Williams v. Valenti*, 2011 WL 2650883, at *1 (5th Cir. July 7, 2011) (citing *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)).

The difficulty is making this assessment lies in the divergent claims of the parties. Both Plaintiff and Defendant assert their respective versions of the events that transpired in the Major's

---

[2] *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973).

office on November 19, 2009, are fact supported by summary judgment evidence.

On Plaintiff's part, he contends that he had been directed to the Major's office in order to report a minor (but allegedly objectionable) use of force by another officer, knocked on the door and entered when nobody answered. He asserts that while he stood there, inside the office, Sergeant Young ran in the door and ran him down onto the ground, cuffed his hands and proceeded to lift him up and slam him face-first into the floor three times in retaliation for Plaintiff's attempt to report the minor use of force. He claims that Defendant Young verbally taunted him for his attempt to complain, which Plaintiff interprets as a retaliatory motive. As a result, he claims, he broke a tooth and another one was loosened, he split his lip and required stitches and received other injuries from the alleged excessive use of force. His summary judgment evidence includes a statement by inmate N'Gai Williams on December 21, 2010, that he saw Sergeant Young running into the Major's office and tackling Plaintiff from behind without asking any questions. *See* Response exhibit at PageID #545. In addition, Petitioner submits a copy of the TDCJ Office of the Inspector General ("OIG") report on the incident, including the inspector's summary of his interview with inmate Williams, which essentially repeats the same statement. *See id*. at Ex. C (PageID #556, 558). However, inmate Williams amended his statement on May 11, 2011, and stated that he saw Sergeant Young run into the Major's office but did not see the initial contact between him and Plaintiff because the door had closed. Nonetheless, he did "hear them going into the file cabinet," an "instant" after Sergeant Young entered the office. *See id*. at PageID #547. Plaintiff contends that "someone has tampered with the witness N'Gai Williams." Response at 2 (PageID #535).[3]

---

[3] The Court treats these documents as competent summary judgment evidence although they are technically not submitted under an authenticating affidavit. They are in Plaintiff's possession and were attached to his Response to Defendant's MSJ. Furthermore, the TDCJ OIG

7

On Defendant's part, he has asserted a number of Undisputed Material Facts that are intended to establish the events that transpired that day. He asserts that he was supervising the P-1 cellblock and witnessed Plaintiff enter the Major's office and responded in order to question him about being there. UMF 3 (MSJ at 3) (citing MSJ Ex. A at 5). He states that when he entered the office, "he observed Milazzo, with his back facing Sergeant Young, going through items on the secretary's desk. The Major's office, at anytime, stores sensitive inmate and employee information." UMF 4 (citing MSJ Ex. A at 6). As he entered the office, he said, "Hey," which startled Plaintiff who turned and "charged towards Sergeant Young." UMF 5 (citing MSJ Ex. A at 6). Defendant Young further states that he reached out and grabbed Plaintiff's upper body as Plaintiff ran toward him, pushed Plaintiff backwards, at which time both fell over a filing cabinet in the secretary's office, with Defendant Young falling on the upper right side of Plaintiff; Plaintiff continued to resist while Defendant Young ordered him to cease resisting and was eventually able to place him in hand restraints. UMF 6 (citing Ex. A at 6). The remainder of Defendant Young's Undisputed Material Facts relate that other officers were summoned for assistance, a Major Use of Force video record commenced, and that Plaintiff was assisted to his feet and escorted to medical, where he was examined and treated. *See* UMF 7 - 11. The Major Use of Force video tape, MSJ Ex. B, picks up with Plaintiff being assisted off the floor (showing bleeding around the side of his face and leaving a puddle of blood on the floor) and escorted to medical, where he was videotaped being treated for injuries as described above and complaining to the medical staff that he had been assaulted.

---

report is contained in its (redacted) entirety, including the summary of inmate Williams' statement, in Defendant's summary judgment evidence, which is authenticated by a business records affidavit. *See* MSJ Ex. F at F14-F15. Additionally, Defendant admits the existence of inmate Williams' statement, along with his later amendment to it (referring to the partial recantation as a "false statement"). *See* MSJ at 22 and MSJ Ex. F at F10.

8

The problem with these supposedly Undisputed Material Facts is that they are based entirely on the Use of Force Report, which in turn relies solely on Sergeant Young's statements regarding the events transpiring in the Major's office. Without question, a portion of the events are videotaped and Plaintiff's actual injuries are well documented. However, the actual confrontation between Plaintiff and Defendant, including where Plaintiff was, what he was doing, what Defendant saw and said (including the "Hey," as he was entering the office), whether Plaintiff "charged" Defendant and whether Defendant simply wrestled Plaintiff to the floor while falling on top of him and causing his injuries or whether he subdued Plaintiff and then slammed him into the floor three times, thereby causing his injuries, is not recorded anywhere. Instead, the events as related in the Major Use of Force report are based wholly on Defendant's own statement. Furthermore, the Undisputed Material Fact number 4 cites to page 6 of Ex. A, a statement by Sergeant Young, to support the statement that Defendant observed Plaintiff "going through items on the secretary's desk" in the Major's office. However, the cited exhibit says nothing of the kind; in fact, there is nothing in the summary judgment evidence to support that statement, which does not appear anywhere else. Therefore, it can hardly be undisputed and its veracity is in question. The same is true of the statement in UMF 6 that Sergeant Young fell on top of Plaintiff when grappling with him. Although the statement is part of Defendant's explanation for Plaintiff's injuries, the cited exhibit does not support it. It simply states that Defendant "pushed him backwards and we caught the corner of the Major's secretary's desk causing us to fall over." MSJ Ex. A at 6. In fact, Ex. A, p. 5, also based on a statement by Defendant, is different, saying, "Sgt. Young unaware of the Offenders intentions grabbed the Offender around his upper body and placed him face down on the floor of the Office." *See id*.

Obviously, Plaintiff's and Defendant's versions of events are different and, though both cite

9

to competent summary judgment evidence, that evidence is not probative of which version is correct, if either is. However, it does create a genuine dispute of material fact, Fed. R. Civ. P. 56(a), which must be resolved by the finder of fact. Therefore, the Court is unable to admit Defendant's Undisputed Material Facts 4, 5 and 6, which are the crux of his summary judgment facts. Without a firm foundation as to whether Defendant essentially tackled Plaintiff from behind, subdued him and slammed his face into the floor three times or, alternatively, Plaintiff charged toward Defendant who responded by grappling him around the upper body with both falling over a filing cabinet to the floor, injuring Plaintiff in the process, the *Hudson* factors-based analysis is fruitless in the context of this summary judgment motion.

### B. Retaliation

Plaintiff also contends that Defendant Young attacked him and later wrote a false disciplinary case against him, charging him with attacking Defendant Young during the November 19, 2009, incident, both acts out of retaliation. Defendant Young also seeks summary judgment on this issue.

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.), *rhn'g* and *rhn'g en banc denied*, 203 F.3d 826 (5th Cir. 1999). Officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir.), *cert. denied*, 488 U.S. 840, 109 S. Ct. 108, 102 L. Ed. 2d 83 (1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He must allege more than his

personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S. Ct. 559, 139 L. Ed. 2d 400 (1997); *Jones*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir.), *cert. denied*, 488 U.S. 985, 109 S. Ct. 540, 102 L. Ed. 2d 570 (1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id*. Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.), *cert. denied*, 549 U.S. 1038, 127 S. Ct. 596, 166 L. Ed. 2d 443 (2006).

In this case, whether Defendant retaliated against Plaintiff is bound to a determination of the events that occurred in the Major's office during the confrontation between Defendant Young and Plaintiff. In his complaint, Plaintiff has clearly stated a retaliatory motive and a chronological sequence of events from which retaliation could be inferred. Defendant argues briefly that he did not know of Plaintiff's intent to complain about the minor use of force that took him to the Major's office, but does not address Plaintiff's statement that Defendant told him " that punks like me need to learn" when making such complaints. *See* Complaint at 4. That simply returns the analysis to the diametric opposite versions of these events espoused by Plaintiff and Defendant, each without any verifying witnesses. More to the point, Defendant also contends that he "did not initiate a disciplinary against Plaintiff with the retaliatory motive suggested by the Plaintiff. Rather, Plaintiff was given a disciplinary for assaulting an officer without a weapon, a Code 3.3 level offense." MSJ at 20. As discussed above, there is a genuine dispute of material fact, Fed. R. Civ. P. 56(a), as to

whether Plaintiff did assault Defendant or Defendant simply tackled Plaintiff from behind and proceeded to use excessive force against him. Therefore, the issue of having written a disciplinary case related to those events is also clouded by a genuine dispute of material fact and must be resolved by a finder of fact.

### C. Qualified Immunity

Defendant ultimately asserts that he is entitled to qualified immunity from Plaintiff's claims, a defense raised originally in his answer.

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The Supreme Court held that courts are initially required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id*. at 201. Second, if the Plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity if his

or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232, 123 S. Ct. 1355, 155 L. Ed. 2d 196 (2003).

The Supreme Court recently revisited *Saucier v. Katz* in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L. Ed. 2d 565 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id*. at 234. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id*. at 236-37. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242. The Supreme Court went on to discuss the facts of the case and found that the defendants were entitled to qualified immunity because the officers' conduct did not violate clearly established law. *Id*. at 244.

Absent a finding of what actually transpired in the Major's office, it is impossible to determine here whether Defendant used excessive force against Plaintiff and whether the circumstances were such to support a finding that his actions were objectively reasonable in context. Therefore, a genuine issue of material fact exists on this issue and it must be resolved by the finder

of fact.

   D.   **Eleventh Amendment Immunity**

In his MSJ, Defendant asserts that he is an employee of the state such that he is immune under the Eleventh Amendment to being sued in his official capacity. MSJ at 10. The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court therefore upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id*. The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). To the extent that Plaintiff is suing the Defendant in this case for money damages, *see* Complaint at 4, he may not recover on the basis of Defendant's official capacities. However, Defendant simply assumes Plaintiff is suing him in his official capacity, which is not apparent from the complaint or other pleadings. To the extent that Plaintiff is suing him in his individual capacity, Eleventh Amendment immunity does not prevent the lawsuit.

Defendant has not shown that there is no "genuine dispute as to any material fact." On the other hand, Plaintiff's Response and evidence (bolstered by similar evidence in Defendant's exhibits) tends to create a genuine dispute, meaning that Defendant Young is not entitled to summary judgment. *VRV Development L.P.*, 630 F.3d at 455; Fed. R. Civ. P. 56(a). It is accordingly

**ORDERED** that Defendant's Motion for Summary Judgment (docket entry #51) is hereby **DENIED**.

So **ORDERED** and **SIGNED** this **25** day of **January, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE